J. R. Lynch v. Commissioner.
Lynch v. Commissioner
Docket No. 7281.
United States Tax Court
1946 Tax Ct. Memo LEXIS 10; 5 T.C.M. (CCH) 1094; T.C.M. (RIA) 46291; December 19, 1946
*10 Held, that in the taxable year petitioner's wife, who contributed no capital orginating with her and who rendered services of only a minor routine character, was not a bona fide partner in petitioner's furnace business for income tax purposes. Carl E. Davidson, Esq., 1525 Yeon Bldg., Portland 4, Ore., for the petitioner. Bryant R. Burton, Esq., for the respondent. ARUNDELL
Memorandum Findings of Fact and Opinion This case concerns an income tax deficiency for 1941 in the amount of $1,618.24 which arises from respondent's action in including in petitioner's income amounts reported by his wife and daughter as their shares of partnership income. The issue for decision is whether in the taxable year a bona fide partnership existed between petitioner and his wife, petitioner having conceded on brief that the partnership should not be recognized as to the daughter. Findings of Fact Petitioner is a resident of Portland, Oregon, and his income tax return for the taxable year was filed with the collector of internal revenue for the district of Oregon. In 1919, petitioner was married to his present wife, Estelle F. Lynch. They have one daughter, Mary Ann, who *11 in the taxable year was 17 years old, living at home with her parents, and attending high school. Petitioner and his wife moved to Portland in 1920, where he started in the furnace business. His wife at that time had $500 of her own, which she gave him to help him get started. As soon as he was able he rented an office, and while he was out making sales his wife looked after the office. From 1924, when her daugher was born, until 1927, Mrs. Lynch rendered no services to the business. After 1927, she again commenced spending a part of her time at the office. In 1933, petitioner purchased the land and building in which his business was conducted, taking title to the property in his and his wife's name as tenants by the entirety. Both were parties to the purchase money mortgage, which was subsequently paid off from the earnings of the business. Petitioner, also in 1933, deeded to his wife, without consideration, title to their residence property. From 1920 to October 1, 1941, the business was conducted as a sole proprietorship under the name "Lynch Furnace Company", and petitioner reported and paid the tax on all the business income. Net profits of the business from 1934 to *12 1940, inclusive, averaged about $7,500 a year, ranging from a low of $3,399 in 1934 to a high of $9,300 in 1939. Just prior to October 1, 1941, the petitioner and his wife had some discussions about forming a partnership, and his wife wanted their daughter also to have an interest in the business. They consulted an attorney in the matter, who informed them that the transactions should be supported by a consideration of some kind. The attorney accordingly prepared a series of deeds and other documents which were executed on October 1, 1941, as follows: 1. A deed from Estelle F. Lynch conveying to petitioner the land and building occupied by the Lynch Furance Company, the deed reciting, "The intention of this deed is to create an estate by the entirety as to the grantor and grantee." 2. A deed from Estelle F. Lynch conveying to petitioner an undivided one-half of the residence property, this deed likewise reciting, "The intention of this deed is to create an estate by the entirety as to the grantor and grantee." 3. A bill of sale from petitioner to Estelle F. Lynch of an undivided one-half interest in the assets belonging to petitioner "doing business as Lynch Furnace Company". *13 4. A bill of sale from Estelle F. Lynch to Mary Ann Lynch of an undivided one-quarter interest in the business assets then belonging to Estelle F. Lynch. 5. A bill of sale by petitioner, Estelle F. Lynch, and Mary Ann Lynch conveying to themselves as "co-partners doing business as Lynch Furnace Company" all the business assets. On the same date, October 1, 1941, the three parties executed a partnership agreement which, after reciting that petitioner owned a one-half interest and his wife and daughter each a one-fourth interest in the business assets, provided among other things that the three should carry on the business of the Lynch Furnace Company in partnership; that petitioner should be entitled first to draw a salary of $300 a month, after deducting which the remaining net profits of the business should be divided equally among the three parties; that each of the parties should diligently employ himself in the business; that petitioner should have the management and exclusive charge of all financial details of the business and the sole right to sign checks on the business bank account; and that upon dissolution the net assets of the business should be divided equally among *14 the three parties. In the taxable year the business of Lynch Furnace Company consisted of the sale and installation of complete heating systems and repairs to existing systems. Petitioner bought furnaces from a number of different manufacturers and sold them at an installed price. The installation of a heating system is a somewhat technical business. It requires the estimating of costs of installing duct work and pipes, and also the fabrication of these items. Much of the business was competitive and obtained on the basis of bids submitted. Petitioner figured the costs of each particular job and prepared the bids. On larger jobs he would sometimes employ a heating engineer to assist in estimating the size of equipment needed and in making layouts, etc. Petitioner actively supervised the installation of heating units and looked after the work which was being conducted by the various mechanics employed by him, usually numbering about 10 or more. The duct work was fabricated in petitioner's shop by his mechanics. Petitioner's wife did not participate in the installation of furnaces and lacked the ability to supervise installations. Likewise, she did not have the experience and *15 ability necessary to make estimates on the cost of installations and submit bids. Her services consisted mainly of answering the telephone, writing letters, invoicing materials, keeping records and memoranda of daily business transactions, etc. The formal books of the business were kept by a public accountant who would call at the office once every week or two and obtain the daily records and memoranda from Mrs. Lynch and record them in the books of account. He likewise prepared financial statements for the business and the income tax returns. Mary Ann Lynch rendered no services at all to the business. After execution of the partnership agreement the business was conducted in much the same manner, in the same location, and under the same name. No capital was added to the business. In fact, the land and building which had formerly been carried on the accounts of the business were thereafter removed and no longer treated as assets of the business. Prior to October 1, 1941, no rent had been paid to petitioner's wife as recognition of her interest in the land and building, and thereafter no rent was paid to petitioner for the use of the building. The residence property was in no way *16 used by or connected with the business. In February 1941 petitioner obtained a contract with the Oregon Shipbuilding Corporation - one of the Kaiser enterprises - for a heating system installation in a new building then being constructed at the shipyards. A further contract was obtained for additional work at the shipyard in August. In 1942 and 1943, Lynch Furnace Company bid jointly with a plumbing concern in Portland and obtained contracts for plumbing and heating installations with other Kaiser shipbuilding enterprises. Gross sales of Lynch Furnace Company increased from approximately $52,000 in 1940 to $97,000 in 1941. Net profits increased by more than 100%. Gross sales in 1942 were approximately $725,000 and in 1943 approximately $830,000. Net profits were about $366,000 in 1942 and $490,000 in 1943. The percentage of net profits to gross sales was, roughly, 15% in 1940, 19% or 20% in 1941, 50% in 1942, and 59% in 1943. The business carried very little investment in fixed assets and shop equipment. The net assets of the business as of October 1, 1941, were estimated by the accountant to be about $18,000, consisting largely of accounts receivable and inventories. Year-end *17 inventories from 1941 to 1943, inclusive, average about $17,000. In August 1943, land for building a new plant for the Lynch Furnace Company was purchased, and title was taken in the names of petitioner, his wife, and his daughter as co-partners doing business as Lynch Furnace Company. Some time in 1945 the business was moved to the new location, and the old building was rented to outside parties for about $175 a month. Petitioner has since then collected the rent and has been reporting it as his income. Petitioner's skill, ability, and experience were major factors contributing to the production of the business income in the taxable year. Petitioner's accountant allocated the 1941 business net income of $19,272.77 between the period prior to October 1st and the period subsequent thereto according to the percentage of gross sales for each part. Thus, he determined that $10,736.15 was allocable to the first period and $8,536.62 to the period after October 1st. The latter figure, after deducting salary of $900 for petitioner, was divided equally among petitioner, his wife and daughter, giving each a share of $2,545.54. Petitioner in his return reported the income for the period *18 prior to October 1, 1941, plus $900 salary, plus his distributive share of $2,545.54 for the period after October 1st, and petitioner's wife and daughter each reported $2,545.54 in their individual returns. In June 1942, distributions were made to petitioner's wife and daughter of their shares of the 1941 income, which they deposited in separate bank accounts. Various sums have since been withdrawn from the business to pay the Federal and state taxes of the respective individuals. In 1943 stocks and bonds were purchased for the account of each party to the partnership agreement as follows: 100 shares American Telephone stock, $15,831; Series "C" U.S. bonds, $10,000; and U.S. Treasury notes, $50,000. The securities were registered in the respective names of the parties. Commencing some time in 1943, Mrs. Lynch was authorized to sign checks on the Lynch Furnace Company bank account. In the deficiency notice respondent added to the income reported by petitioner the amount of income reported by his wife and daughter and determined the deficiency accordingly. Petitioner, his wife, and their daughter were not in the taxable year engaged in carrying on business in partnership within *19 the meaning of the revenue laws. Opinion ARUNDELL, Judge: Petitioner makes a strenuous effort to take his case outside the scope of the Tower and Lusthaus * decisions and subsequent decisions of this Court in which, under the principles laid down by the Supreme Court, family partnerships have been found to be lacking in substance and reality, but we think he does not succeed. In the first place, petitioner attempts to show a contribution of capital by Mrs. Lynch. The various transfers of interests in the residence property and in the real property occupied by the business obviously were adopted to give some color of substance to the transfer by petitioner to his wife of a half interest in the business assets. They were adopted at the suggestion of the attorney whom petitioner consulted about organizing the partnership. The legal efficacy of the deed of Mrs. Lynch to convey any interest to petitioner in the land and building used in the business is doubtful. Title to the property was already held by petitioner and his wife by the entirety, and the deed states its intention *20 to be to create a tenancy by the entirety. In any event, however, after the execution of the partnership agreement and until some time in 1945 when the Lynch Furnace Company was moved to a new location, the business continued to have the use of the land and building, rent-free, the same as before. The residence property, of course, continued to be used only for the family home. No capital was in fact added to the business as a result of the several transactions, and we are unable to find from all the evidence that Mrs. Lynch made any contribution of capital "originating with her" within the rationale of the Tower case. The $500 given by Mrs. Lynch to her husband some 20 years earlier was never considered as having given her any interest in the business, and it can have no material effect here. Moreover, while some capital was needed in the business, it did not play a major part in the production of income. The business at no time carried a very large investment in fixed assets as compared with its earnings, and inventory turnover was very rapid. It appears to us, as we have found, that petitioner's experience, ability, and skill were the major factors contributing to the earning *21 of the business income. As for the wife's services, we find that they were largely of a routine, clerical nature. Certainly they cannot be characterized as those "vital additional" services which are necessary to support a valid business partnership between a husband and wife. The fact of the matter is that the business, after the execution of the partnership agreement, continued much the same as before. The wife devoted part time to the business, rendering minor services. Petitioner continued in control, made the sales, figured the costs, obtained the contracts, and supervised the installations. We can perceive no real business purpose that was to be served by the partnership agreement - no purpose, in fact, other than to effect a reallocation of petitioner's business income among members of his family. Petitioner has conceded that the partnership may not be recognized as to his daughter. However, the attempt to bring her in as a full partner, without contribution of their capital or services and at a time when she was a minor attending high school, itself only further tends to demonstrate the lack of any real business purpose in executing the partnership agreement. We think *22 that petitioner's wife stands in little better position than his daughter, and we conclude that his case falls within the ambit of the Tower and Lusthaus cases and such subsequent decisions of this Court as in , , and . Decision will be entered for the respondent. Footnotes
*. ; .↩